UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06-CV-1-R

LISA OLIVER,     PLAINTIFF

v.

GREG REYNOLDS, et. al.,     DEFENDANTS

## OPINION & ORDER

This matter comes before the Court on the Defendants' Motion to Vacate, Alter or Amend (Docket #65) the Memorandum Opinion issued by this Court on July 25, 2007 (Docket #53). For the following reasons, the Defendants' Motion is **DENIED**.

## STANDARD

The court may grant a motion to alter or amend, pursuant to Federal Rule of Civil Procedure 59(e), "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law or to prevent manifest injustice." *GenCorp v. American International*, 178 F.3d 804, 834 (6th Cir.1999) (internal citations omitted). "[C]ourts typically will consider additional evidence accompanying a Rule 59(e) motion only when it has been newly discovered, and that to [c]onstitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp*, 178 F.3d at 834. A FRCP 59(e) motion to alter does not provide the Plaintiff another opportunity to argue the merits of their case. *GenCorp* at 834.

## DISCUSSION

The Defendants contend that the Court erred when it determined that: (1) the back driveway of the Oliver residence was part of the curtilage of the home; (2) even if the back driveway of the Oliver residence was part of the curtilage of the home, exigent circumstances existed that permitted Reynolds to enter the curtilage; (3) the Court missed the "true facts" of the

case, which justified the entry of Reynolds into the home; (4) Reynolds is entitled to qualified immunity because he made a "split second decision;" and (5) Officer Wentworth is entitled to summary judgment and qualified immunity. The Court shall address each of these five (5) arguments separately.

### 1. Curtilage of the Home

The Defendants contend that the Court erred when it determined that the back driveway was part of the curtilage of the home because the Court mistakenly stated that there was a fence that enclosed three (3) sides of the backyard when it conducted its *Dunn* analysis. *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The *Dunn* factors, which determine whether an area constitutes curtilage, include: "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing." *Dunn*, 480 U.S. at 301.

While the Court acknowledges that a fence does not completely surround three (3) sides of the backyard, that fact alone was not dispositive in the decision by the Court in determining that the back driveway qualifies as curtilage of the home. The Court acknowledged that the back driveway was not completely enclosed, and noted that "full enclosure is not necessary to satisfy the second [*Dunn*] factor." (citing *U.S. v. Jenkins*, 124 F.3d 768, 773 (6th Cir. 1997)); Memorandum Opinion at 11-12.. Similar to *Jenkins*, the Court stated that "the back driveway is obstructed from the main road by the house." *Id.* The Court also noted that unlike the front and side driveways, the back driveway was not visible nor accessible from the main road. Memorandum Opinion at 12. Accordingly, the Court did not err when it determined that the

second *Dunn* factor supports a finding that the back driveway is curtilage.

In regards to the fourth *Dunn* factor, the Court noted that similar to *Jenkins*, "the back driveway area in question is located behind the house, and therefore, is well shielded from the view of the public passing by the home." *See Jenkins* at 773; Memorandum Opinion at 12-13.. The Court also noted that trees and some fencing shield the back driveway from intrusion. *Id.* Accordingly, the Court did not err when it determined that the fourth *Dunn* factor supports a finding that the back driveway is curtilage.

The Defendants also make factual claims in support of their argument, asserting that "[t]he area where Reynolds first saw the minors is visible from the road that runs in front of Plaintiff's residence." In its Memorandum Opinion, the Court stated that a factual dispute existed as to where Reynolds was when he first observed the two (2) minors in the back area of the home, as the Court previously explained:

> In his deposition he states that he "was around back" when he saw them holding and/or sitting next to green bottles. As the Court cannot state with certainty where Reynolds stood when he observed the minors, it cannot be determined if Reynolds was or was not standing in the curtilage of the home before seeing them. In looking at these facts in a light most favorable to the nonmoving party, in this case the Plaintiff, at this time, the Court must assume that Reynolds was standing in the curtilage of the Oliver residence when he spotted the minors by the porch.

Memorandum Opinion at 13-14. Again, the Court must emphasize that under FRCP 56 it must view these facts in a light most favorable to the non-moving party, which in this case is the Plaintiff. The Court cannot simply rely on the argument that Reynolds saw the minors from an area visible from the road when he previously stated that he first saw them "around back." Accordingly, the Court did not err when it determined that a factual dispute existed as to where Reynolds stood when he first saw the minors.

Lastly, the Defendants contend that because no court within the Sixth Circuit has determined that a driveway may be considered curtilage, this Court, under *Saucier v. Katz*, 553 U.S. 194 (2001), cannot make that determination as a matter of law. As noted in the Memorandum Opinion at page 10, the Sixth Circuit Court of Appeals, in *United States v. Smith*, stated "*[w]hether a driveway is protected from entry by police officers depends on the circumstances*. The fact that a driveway is within the curtilage of a house is not determinative if its accessibility and visibility from a public highway rule out any reasonable expectation of privacy," and the Court also noted that factors to be used in making this decision included "accessibility and visibility."*United States v. Smith*, 783 F.2d 648, 651-52 (6th Cir. 1986)(emphasis added). In abiding by this precedent, the Court was not precluded from making a finding that the back driveway constitutes curtilage. Accordingly, the Court did not err when it determined that the back driveway was curtilage of the home.

## 2. Exigent Circumstances

The Defendants contend that even if the back driveway qualifies as curtilage of the home, exigent circumstances existed that warranted the entry by Reynolds. The Defendants are attempting to re-argue this issue, which is precluded by FRCP 59, and therefore, should not be considered by the Court. *See GenCorp*, 178 F.3d at 834 (holding that a FRCP 59(e) motion to alter does not provide the Plaintiff another opportunity to argue the merits of their case). Nonetheless, the Court shall address the Defendants' argument.

The Defendants have stated that Reynolds had the right to enter the curtilage in order to protect the minors from harming themselves or others; the same argument the Court addressed in its Memorandum Opinion at page 14-15. The Defendants contend that the Court erred when it

4

stated that Reynolds could have accomplished his goal of preventing minors from escaping by standing at the end of the side driveway; however, this factual dispute between the Court and the Defendants was not dispositive in determining that no exigent circumstances existed. On page 15 of the Memorandum Opinion, the Court stated:

> When Reynolds decided to go to the back of the home, neither he nor Wentworth had any direct evidence that suggested there were intoxicated minors at the Oliver residence, but instead Reynolds relied upon a hunch that he believed the initial minor he had encountered in front of the home may not have been forthcoming. However, Reynolds does not recall with certainty if either he or Wentworth had even inquired about alcohol in the home, and Wentworth stated they he believed the minor at the front of the home was not intoxicated...[t]he only knowledge that the officers had at that point was from a tip, which did not even identify the Oliver residence. This suggests that exigent circumstances were not present when Reynolds went around to the back of the house because he did not know of nor have any firsthand reason to suspect an on-going crime taking place at the residence.

In looking at the totality of the circumstances as set out by the Supreme Court in *Brigham City, Utah v. Stuart*, 126 S. Ct. 1943, 1947 (2006), the Court properly found that based on what Reynolds *knew* at the time, there was no reason to suspect a risk of serious injury to himself or others that warranted Reynolds entering the curtilage of the home. Accordingly, the Court did not err when it determined that no exigent circumstances existed that justified the entry onto the curtilage by Reynolds.

### 3. "True Facts"

The Defendants next argue that the Court did not rely upon the "true facts" of the case because they are certain that Reynolds was not standing in the curtilage of the home when he spotted the minors. As determined *supra*, the Court cannot and shall not rely upon the factual opinions of the Defendants when a factual dispute exists as to where exactly Reynolds stood when he first viewed the minors. That dispute is an issue that should go before the finder of fact.

5

Accordingly, the Court did not err when it did not assume that Reynolds was not standing in the curtilage of the home when he spotted the minors.

### 4. Qualified Immunity

Making similar arguments that they incorporated in their Motion for Summary Judgment, the Defendants once again contend that Reynolds is entitled to qualified immunity. As noted *supra*, the Defendants are attempting to re-argue this issue, which is precluded by FRCP 59, and therefore, should not be considered by the Court. *See GenCorp*, 178 F.3d at 834 (holding that a FRCP 59(e) motion to alter does not provide the Plaintiff another opportunity to argue the merits of their case). The only difference this time is that the Defendants now contend that Reynolds had to make a "*split second decision* to proceed on the driveway that wraps around the back of the house." The Court shall address this issue once again.

Recently, the Sixth Circuit Court of Appeals, in *Bouggess v. Mattingly*, 482 F.3d 886, 893-94 (6th Cir. 2007), stated "[t]he legal standard, [for a split second decision], is objective. Even a split-second decision, if sufficiently wrong, may not be protected by qualified immunity."(holding that the officer was not entitled to qualified immunity when he lacked probable cause to believe that the plaintiff posed a serious danger to the officer or to the public). Split-second decision generally come about in circumstances that are "extremely dangerous situations," and they are decided in the "heat of the moment." *Turpin v. Mueller*, 37 Fed. Appx. 151, 153 (6th Cir. 2002); *Bouggess*, 482 F.3d at 893.

In the instant matter, Reynolds had time to make a conscious decision to enter the curtilage of the home as he was not witness to any on-going violation nor did he know or observe any imminent danger. Based on what was known before Reynolds decided to enter the

curtilage, a reasonable officer under similar circumstances would not have determined that he was in a situation that was extremely dangerous or required a "heat of the moment" decision. Accordingly, the Court did not err when it determined that Reynolds was not entitled to qualified immunity for his entry into the curtilage, back porch and home of the Plaintiff.

### 5. Officer Wentworth

The Defendants assert that the Court erred when it determined that a factual issue existed regarding whether Wentworth was entitled to enter the Oliver residence because Reynolds was "clearly" entitled to enter the Oliver residence, and therefore, Wentworth had every right to assist Reynolds, and any consent to enter the home was "irrelevant." As determined previously and noted *supra*, factual issues exist as to whether Reynolds properly entered the curtilage and home of the Plaintiff. Therefore, whether Oliver gave Wentworth consent to enter her home is relevant.

The Defendants mistakenly assert in the instant motion that in its Memorandum Opinion the Court held that "if an officer gains entry into a home, those officers that there to back him up must have an independent lawful reason for gaining entry to a home."(emphasis included). On the contrary, what the Court did hold was that based on evidence before the Court factual issues exist regarding whether or not Wentworth had the consent of Oliver to enter the home. As the main basis of the Defendants' argument for reconsideration as to Wentworth, the Defendants mistakenly rely upon the assumed argument that Reynolds was legally in the Oliver residence, which, as determined *supra* by the Court in its Memorandum Opinion and instant opinion, is still in dispute. The Defendants focus the bulk of their argument on this issue addressing the entry of Wentworth into the basement of the home after hearing Reynolds in the basement. However, the

7

Court found that the legality of both the *initial entry* as well as entry into the basement by Wentworth were issues that needed to go before a finder of fact. See Memorandum Opinion at 7-9.  Accordingly, the Court finds that Wentworth is not entitled to a vacation, alteration or amendment of judgment.

Lastly, the Defendants question the reasoning used by the Court to distinguish the Sixth Circuit Court of Appeals case of *Sargent v. City of Toledo Police Dept.*, 150 Fed. Appx. 470, 473-74 (6th Cir. 2005) from the instant matter, contending that the factors pointed out by the Court were not dispositive when the Sixth Circuit made its decision.  However, a careful examination of *Sargent* indicates that before the officers entered the home in that matter, they were responding to a "911" call made about that *specific* home, and that *both* officers observed continuing violation of a nuisance before any attempt to enter the home was made. *Sargent* at 472.  Both of these circumstances were not present in the instant case.  In addition, here, in contrast to *Sargent*, the Court also noted in its Memorandum Opinion that "Wentworth's alleged illegal entry into the home may have taken place before he heard Reynolds down in the basement, and therefore, hearing Reynolds in the basement after the fact does not excuse the alleged initial illegal entry." Memorandum Opinion at 9.

In looking at the circumstances in the instant matter, in contrast to *Sargent*, the Court did not err when it determined that in this particular situation *Sargent* does mandate that the Court dismiss, as a matter of law, the factual questions concerning the initial entry of Wentworth into the Oliver residence.  Accordingly, the Court did not err when it determined that Wentworth is not entitled to summary judgment and qualified immunity.

## CONCLUSION

**IT IS SO ORDERED:**

For the foregoing reasons, the Defendants' Motion to Alter, Vacate or Amend (Docket #65) is **DENIED**.